## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **DELTA MECHANICAL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **2:06-cv-01095 JWS** |
| | ) | |
| **vs.** | ) | **ORDER AND OPINION** |
| | ) | |
| | ) | **[Re: Motion at Docket 42]** |
| **THE GARDEN CITY GROUP, INC.,** | ) | |
| ***et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## I.  MOTIONS PRESENTED

At docket 42, defendants the Garden City Group, Inc.; Rheem Manufacturing Company; American Water Heater Company; Bradford White Corporation; A.O. Smith Corporation; and Lochinvar Corporation (collectively "defendants") move to dismiss plaintiff's remaining claims for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  At docket 44, plaintiff Delta Mechanical, Inc. ("Delta") opposes the motion.   Defendants reply at docket 45.  Oral argument was heard on the motion.

## II.  BACKGROUND

On May 1, 2000, the United States District Court for the Western District of Missouri approved a settlement agreement in *Heilman, et al. v. Perfection Corporation, et al.*, Case No. 99-0679-CW-W-6, a class action suit involving defective water heaters.[1] The settlement agreement defined the class as "all persons throughout the United States who own a water heater manufactured by a Tank Manufacturer [settling defendants] containing a Subject Dip Tube or who owned such a heater and suffered damages."[2]  The settling defendants, also referred to as the water tank defendants in this case, are manufacturers of water heater tanks in which dip tubes were installed.

The settlement agreement provides in pertinent part:

8.2.    Class members who own a water heater with a Subject Dip Tube, but who have not incurred out-of-pocket expense, or whose Subject Dip Tube related problems have not been fully remedied, shall be entitled to the benefits as described below, subject to the following provisions.  The following benefits will be effective upon the first Notice by Publication.

8.2.1.  Benefits under Section 8.2 will be in the form of (1) a certificate for a dip tube replacement or (2) repair of property damage.

8.2.2.  Each Class Member seeking benefits under Section 8.2 must submit a timely, completed and signed Proof of Claim.

8.2.3.  Upon submission of a timely and valid Proof of Claim requesting the replacement of a Subject Dip Tube, a certificate for a dip tube replacement will be issued to the Class Member.  Certificates for dip tube replacements must be redeemed within 6 months of the receipt of the certificate.  Each certificate shall be printed with the date of mailing.  The certificate shall be redeemed by the owner of the water heater.  The water heater's serial number will be printed on

---

[1]The background facts in this section are taken from plaintiff's complaint and the Class Action Settlement Agreement approved in *Heilman, et al. v. Perfection Corporation, et al.*, Case No. 99-0679-CW-W-6.

[2]Amended Complaint at 4, exh. A, doc. 1.

the certificate, and the certificate can only be applied to that water heater by matching the serial number on the certificate to the serial number on the water heater.  The names of authorized service personnel who will be available to provide the service will be provided with the certificate.  Settling Defendants shall ensure that adequate and trained service personnel are available to provide service to Class Members in a timely manner.[3]

The settlement agreement also provided that "[t]o receive benefits under Section 8.2, Proofs of Claim must be postmarked on or before December 31, 2000."[4]

The court subsequently approved the Garden City Group, Inc. ("GCG") as the third-party administrator of the settlement agreement.  Delta was selected as one of the "authorized service personnel" to perform dip tube replacements under the settlement agreement.  Delta performed hundreds of dip tube replacements for class members from January 2000 through December 2001.  Delta performed the dip tube replacements after class members timely submitted proof of claim forms to GCG.  Delta alleges that it has not been compensated for work performed between January 2000 and December 2001 in furtherance of the settlement agreement because defendants failed to issue certificates to otherwise eligible class members.  In December 2001, Delta retained a collection agency to pursue its claims against defendants.  In August 2003, defendants informed Delta that the settlement fund was exhausted.

On April 15, 2004, Delta filed a motion to enforce the settlement agreement in *Heilman*.[5]  The settling defendants opposed the motion on the grounds that Delta did not have standing to enforce the settlement agreement because Delta was not a party

---

[3]Class Action Settlement Agreement at 14-15, exh. 2, doc. 17.

[4]*Id.* at 16.

[5]Doc. 18, exh. D at 7.

-3-

to and did not seek to intervene in the *Heilman* action.  Delta subsequently filed a motion to treat its motion to enforce the settlement agreement as a motion to intervene, which the court granted.  The court noted that absent intervention, it did not have jurisdiction to hear Delta's motion to enforce the settlement agreement because the court's final judgment provided for continuing jurisdiction "over this Action and the Settling parties, including all members of the Class," for the purposes of enforcing the settlement agreement, and Delta was neither a party nor a class member.[6]

In an order dated September 27, 2005, the *Heilman* court denied Delta's motion to intervene.[7]  The court concluded that Delta was not entitled to intervene as a matter of right because it had failed to demonstrate "that it has a 'recognized interest,' that its interest might be impaired by the case's disposition, and that its attempt to intervene was timely."[8]  The court's order specifically noted that "Delta completed most of the dip tube work at issue by June 30, 2001 (though some as late as December 2001), but it did not file its motion to enforce the settlement agreement until April 15, 2004."[9]  The court also denied Delta's request to permissively intervene as untimely.

In response to Delta's argument that it should be permitted to intervene to enforce the settlement agreement because it is a third party beneficiary of the agreement, the court concluded:

---

[6]Doc. 18, exh. D at 4.

[7]Doc. 18, exh. D.

[8]Doc. 18, exh. D at 8.

[9]Doc. 18, exh. D at 7.

Although Delta is a third-party beneficiary with a right to enforce the settlement agreement, Delta (a non-party) can only effectuate that right in this case if it is allowed to intervene.  Whether described as claim for reimbursement from the settlement fund or a third-party beneficiary's right to enforce the settlement agreement, the relief Delta seeks is the same - reimbursement from the Settling Defendants for dip tube work performed.  As discussed at length above, Delta has not demonstrated satisfaction of the requirements for intervention as a matter of right or permissive intervention.  Nothing about Delta's status as third-party beneficiary changes that conclusion.[10]

On March 20, 2006, Delta filed a first amended complaint against GCG and the water tank defendants in the Superior Court of the State of Arizona for the County of Maricopa.  Delta's complaint alleged four claims against all defendants: breach of contract, unjust enrichment, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.  Defendants timely removed plaintiff's complaint to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.

In prior motion practice, defendants moved to dismiss all of Delta's claims. By order dated June 11, 2007, the court dismissed Delta's claims for promissory estoppel and unjust enrichment as barred by the applicable statute of limitations.[11]  The court denied defendants' motion to dismiss as to Delta's claims of breach of contract and breach of the covenant of good faith and fair dealing, finding that Missouri law applies to those claims and none of the parties applied Missouri law in their briefing on the motion to dismiss.  Defendants have now filed an amended motion to dismiss Delta's breach of contract and breach of the covenant of good faith and fair dealing claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[10]Doc. 18, exh. D at 10.

[11]Doc. 36.

## III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[12]  The court is not required to accept every conclusion asserted in the complaint as true, rather the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."[13] A claim should only be dismissed if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[14]  A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[15]

## IV.  DISCUSSION

Defendants move to dismiss Delta's breach of contract and breach of the covenant of good faith and fair dealing claims on the grounds that 1) under Missouri law, Delta is not a third-party beneficiary of the *Heilman* settlement agreement and thus has no right to enforce the agreement, and 2) defendant GCG was not a party to the settlement agreement and thus cannot be held liable for breach of that agreement.

---

[12]*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997).

[13]*Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (quoting *Brian Clewer, Inc. v. Pan American World Airways, Inc.,* 674 F.Supp. 782, 785 (C.D.Cal. 1986)).

[14]*Vignolo,* 120 F.3d at 1077.

[15]B*alistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990).

Delta opposes the motion on the grounds that the *Heilman* court's finding that Delta is a third-party beneficiary of the settlement agreement "must be given collateral estoppel effect in this litigation."[16]  In the alternative, Delta argues that even if the earlier court's finding is not given collateral estoppel effect, this court "should conclude that Delta was an intended third party beneficiary based on the language and intent of the Settlement Agreement."[17]  Delta further argues that although GCG was not a party to the settlement agreement, GCG is liable as a contractual delegee.

"Federal law governs the collateral estoppel effect of a case decided by a federal court."[18]  Under federal law, collateral estoppel prevents relitigation of an issue when three factors are met:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated [by the party against whom preclusion is asserted] in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.[19]

Here, the issue at stake is whether Delta is a third-party beneficiary of the *Heilman* settlement agreement and is thus able to enforce the agreement.  In *Heilman*, the issue was whether Delta should be permitted to intervene to enforce the settlement agreement because it is a third-party beneficiary of the agreement.  In its order denying Delta's motion to intervene, the *Heilman* court concluded that "Delta (an approved plumber) is a third party beneficiary" of the settlement agreement.  However, the

---

[16]Doc. 44 at 7.

[17]*Id.*

[18]*Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996).

[19]*Id.* (citing *Town of North Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993)).

determination that Delta is a third-party beneficiary of the agreement was not a critical and necessary part of the court's decision denying Delta's motion to intervene.  The *Heilman* court denied Delta's motion to intervene on the grounds that Delta failed to satisfy the requirements for intervention as a matter of right or permissive intervention. The court specifically found that Delta failed to demonstrate "that it has a 'recognized interest,' that its interest might be impaired by the case's disposition, and that its attempt to intervene was timely."[20]  The court's order states in pertinent part, "As discussed at length above, Delta has not demonstrated satisfaction of the requirements for intervention as a matter of right or permissive intervention.  Nothing about Delta's status as a third-party beneficiary changes that conclusion."[21]  Because the *Heilman* court's conclusion that Delta is a third-party beneficiary was not a critical and necessary part of its decision denying Delta's motion to intervene, the *Heilman* court's conclusion is not entitled to collateral estoppel effect in this action.

The court next considers whether Delta is an intended third-party beneficiary of the *Heilman* settlement agreement.  It is undisputed that Missouri law applies.  A third-party beneficiary is one who is not privy to a contract or its consideration, but to whom the law gives a right to maintain a cause of action for breach of contract.[22]  Under Missouri law, "[o]nly those third parties for whose primary benefit the contracting parties

---

[20]Doc. 18, exh. D at 8.

[21]Doc. 18, exh. D at 10.

[22]*Kansas City N.O. Nelson Co. v. Mid-Western Const. Co. of Missouri, Inc.*, 782 S.W.2d 672, 677 (Mo. App. 1989).

intended to make the contract may maintain an action."[23]  "The intention of the parties is to be gleaned from the four corners of the contract, and if uncertain or ambiguous, from the circumstances surrounding its execution."[24]  "Though the third party beneficiary need not be named in the contract, the terms of the contract must express directly and clearly, an intent to benefit the specific party or an identifiable class of which the party asserting rights as a third party beneficiary is a member."[25]  "The necessary intent is not simply a desire to advance the interests of another, but rather an intent that the promisor assume a direct obligation to him."[26]

The settlement agreement explicitly names the beneficiaries of the agreement as class members who own a water heater with a subject dip tube.  While Delta later became a member of a class identified in the settlement agreement as "authorized service personnel," the language of the settlement agreement did not "directly and clearly" express an intent to benefit that class.  More specifically, the settlement agreement does not express any intent that the defendants assume a direct obligation to Delta or other "authorized service personnel."  Section 8 of the settlement agreement, which sets forth the obligations of the settling defendants, provides that class members who own a water heater with a subject dip tube are entitled to receive a certificate for a dip tube replacement upon timely submission of proof of claim and states that the

---

[23]*Id.*

[24]*Laclede Investment Corp. v. Kaise*r, 596 S.W.2d 36,41 (Mo.App. 1980).

[25]*Id.* at 42.

[26]*Volume Services, Inc. v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 785, 794 (Mo. App. 1983) (internal citation and quotation omitted).

names of authorized service personnel who are available to provide the service will be provided with the certificate.  Section 8 also provides that class members who have incurred out-of-pocket expenses to repair or replace a subject dip tube or damage caused by a dip tube are entitled to reimbursement upon timely submitting a proof of claim.  Section 8 further provides that a proof of claim seeking reimbursement in excess of $175 will be referred to the Special Circumstances Panel.  While Section 8 of the settlement agreement expressly states that "Settling Defendants are to bear all costs incurred in compensating the members of the Special Circumstances Panel," Section 8 does not include any language concerning the compensation of "authorized service personnel," the class of which Delta was a member.[27]

Under Missouri law, "[m]ere incidental beneficiaries, parties benefitting only collaterally from the contract, are not entitled to recover."[28]  Based on the plain language of the settlement agreement, it is clear that Delta was a mere incidental beneficiary of the settlement agreement, not an intended third-party beneficiary to whom the settling defendants intended to assume a direct obligation.

Citing *Volume Services,* Delta argues that the issue of whether Delta is an intended third-party beneficiary of the settlement agreement cannot be decided on a Rule 12(b)(6) motion to dismiss.  However, *Volume Services* is clearly distinguishable from the case at bar.  In *Volume Services*, the court held that an allegation that a contract was specifically intended to benefit a third party, "can only be proved either

---

[27]Doc. 42-2 at 15-18.

[28]*Volume Services*, 656 S.W.2d at 795.

through express provision in [the] contract, or through ambiguous contractual language coupled with surrounding circumstances demonstrating an intent that the defendants would assume a direct obligation to Delta sufficient to overcome the presumption that absent express declaration, parties do not contract for the benefit of others."[29]  In *Volume Services*, the court could not glean the parties' intentions from the four corners of the contract because it did not have a copy of the contract before it.  Here, the settlement agreement, which is before the court, does not contain an express provision indicating defendants' intent to benefit Delta, nor does it contain ambiguous contractual language so as to necessitate submission of the question of intent to a jury.  For the above reasons, the court finds as a matter of law that Delta is not a third party beneficiary of the *Heilman* settlement agreement and thus is not entitled to enforce the settlement agreement.

Defendants next argue that Delta is not entitled to assert breach of contract claims or breach of the covenant of good faith and fair dealing claims against GCG because GCG is an agent of the settling defendants in *Heilman*, not a party to the settlement agreement.  Delta argues that GCG is liable under the settlement agreement because GCG acted as the settling defendants' delegee, and the settling defendants expressly delegated to GCG the "management of the entire claims submission process including the duty to render payment to participating approved contractors for all work performed on behalf of the  eligible class members in furtherance of the Agreement."[30]

---

[29]*Volume Services*, 656 S.W.2d at 794.

[30]Doc. 44 at 16 (citing First Amended Complaint ¶ 6).

Without citing any authority, Delta argues that whether GCG acted as an agent or a contractual delegee is significant because "a contractual delegee assumes the legal duties of the delegating party, while a mere agent may or may not have liability to a third party for carrying out its agency functions on behalf of its principal, depending on whether the principal is disclosed or not."[31]

Delta's argument is unavailing because it does not cite, nor is the court aware of, any controlling legal authority in support of its theory that a contractual delegee assumes the legal duties of the delegating party.  Moreover, whether GCG is characterized as an agent or a delegee, GCG cannot be held liable for the contract claims alleged by Delta.  It is well established under Missouri law that "an agent for a disclosed principal is not a party to a contract and is not liable for its nonperformance."[32] Similarly, the Restatement Second of Contracts provides that "[u]nless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with obligor by the person delegated discharges any duty or liability of the delegating obligor."[33]  Here, there is no allegation that GCG agreed to assume the settling defendants' liability.  To the contrary, the plain language of the settlement agreement explicitly states that the "fees and expenses of the Claims Administrator are

---

[31]Doc. 44 at 15 n.5.

[32]*Hardcore Concrete, LLC v. Fortner Ins. Svcs, Inc.*, 220 S.W.3d 350, 355 (Mo. App. 2007).

[33]Restatement (Second) of Contracts  § 318 (1981).

the responsibility of Settling Defendants."[34]  For the above reasons, the court concludes

that Delta's claims against GCG fail as a matter of law.

## V.  CONCLUSION

For the reasons set out above, defendants' motions to dismiss at docket 42 is

**GRANTED**, and this matter is **DISMISSED**.

DATED at Anchorage, Alaska, this 25th day of January 2008.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[34]Doc. 42-2 at 23.