UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| DELTA MECHANICAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:06-cv-1095 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| THE GARDEN CITY GROUP, INC., | ) | [Re:   Motion at Docket 50] |
| *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 50, defendants the Garden City Group, Inc. ("GCG"); Rheem Manufacturing Co.; American Water Heater Co.; Bradford White Corp.; A.O. Smith Corp.; State Industries, Inc.; and Lochinvar Corp. (collectively "Defendants") move for an award of attorney's fees.  At docket 60, plaintiff Delta Mechanical, Inc. ("Delta") opposes the motion. Defendants reply at docket 62.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

On May 1, 2000, the United States District Court for the Western District of Missouri approved a settlement agreement in *Heilman, et al. v. Perfection Corporation,*

*et al.*, Case No. 99-0679-CW-W-6, a class action suit involving defective water heaters.[1] The settlement agreement defined the scope of the class as "all persons throughout the United States who own a water heater manufactured by a Tank Manufacturer [settling defendants] containing a Subject Dip Tube or who owned such a heater and suffered damages."[2]  The settling defendants, collectively referred to as the water tank defendants ("WTD") in this case, are manufacturers of water heater tanks in which dip tubes were installed.

The settlement agreement provides in pertinent part:

8.2.    Class members who own a water heater with a Subject Dip Tube, but who have not incurred out-of-pocket expense, or whose Subject Dip Tube related problems have not been fully remedied, shall be entitled to the benefits as described below, subject to the following provisions.  The following benefits will be effective upon the first Notice by Publication.

8.2.1.  Benefits under Section 8.2 will be in the form of (1) a certificate for a dip tube replacement or (2) repair of property damage.

8.2.2.  Each Class Member seeking benefits under Section 8.2 must submit a timely, completed and signed Proof of Claim.

8.2.3.  Upon submission of a timely and valid Proof of Claim requesting the replacement of a Subject Dip Tube, a certificate for a dip tube replacement will be issued to the Class Member.  Certificates for dip tube replacements must be redeemed within 6 months of the receipt of the certificate.  Each certificate shall be printed with the date of mailing.  The certificate shall be redeemed by the owner of the water heater.  The water heater's serial number will be printed on the certificate, and the certificate can only be applied to that water heater by matching the serial number on the certificate to the serial number on the water heater.  The names of authorized service personnel who will be available to provide the service will be provided with the certificate.  Settling Defendants shall

---

[1]The background facts in this section are taken from plaintiff's complaint and the Class Action Settlement Agreement approved in *Heilman, et al. v. Perfection Corporation, et al.*, Case No. 99-0679-CW-W-6.

[2]Amended Complaint at 4, exh. A, doc. 1.

ensure that adequate and trained service personnel are available to provide service to Class Members in a timely manner.[3]

The settlement agreement also provided that "[t]o receive benefits under Section 8.2, Proofs of Claim must be postmarked on or before December 31, 2000."[4]

The court approved GCG as the third-party administrator of the settlement agreement.  Delta was selected as one of the "approved plumbers" to perform dip tube replacements under the settlement agreement.  Delta performed hundreds of dip tube replacements for class members from January 2000 through December 2001.  Delta replaced the dip tubes after the class members timely submitted proof of claim forms to GCG.  Delta alleges that it has not been compensated for work performed between January 2000 and December 2001 in furtherance of the settlement agreement because defendants failed to issue certificates to otherwise eligible class members.  In December 2001, Delta retained a collection agency to pursue its claims against defendants.  On August 12, 2003, defendants informed Delta that the settlement fund was exhausted.

On April 15, 2004, Delta filed a motion to enforce the settlement agreement in *Heilman*.[5]  The settling defendants opposed the motion on the grounds that Delta did not have standing to enforce the settlement agreement because Delta was not a party to and did not seek to intervene in the *Heilman* action.  Delta subsequently filed a motion to treat its motion to enforce the settlement agreement as a motion to intervene,

---

[3]Class Action Settlement Agreement at 14-15, exh. 2, doc. 17.

[4]*Id.* at 16.

[5]Doc. 18, exh. D at 7.

which the court granted.  Delta argued that it should be permitted to intervene to enforce the settlement agreement because it was a third-party beneficiary of the settlement agreement.  The court noted that absent intervention, it did not have jurisdiction to hear Delta's motion to enforce the settlement agreement because the court's final judgment provided for continuing jurisdiction "over this Action and the Settling parties, including all members of the Class," for the purposes of implementing, enforcing, and interpreting the settlement agreement, and Delta was neither a party nor a class member.[6]

In an order dated September 27, 2005, the Missouri court denied Delta's motion to intervene.[7]  The court concluded that Delta was not entitled to intervene as a matter of right because it had failed to demonstrate the following requirements: "that it has a 'recognized interest,' that its interest might be impaired by the case's disposition, and that its attempt to intervene was timely."[8]  The court's order specifically noted that "Delta completed most of the dip tube work at issue by June 30, 2001 (though some as late as December 2001), but it did not file its motion to enforce the settlement agreement until April 15, 2004."[9]  The court also denied Delta's request to permissively intervene as untimely.  As to Delta's argument that it should be permitted to intervene to enforce the agreement because it is a third-party beneficiary of the agreement, the court concluded:

> Although Delta [as an "approved plumber"] is an intended third-party beneficiary with a right to enforce the settlement agreement, Delta (a non-party) can only effectuate that right in this case if it is allowed to intervene.  Whether

---

[6]Doc. 18, exh. D at 4.

[7]Doc. 18, exh. D.

[8]Doc. 18, exh. D at 8.

[9]Doc. 18, exh. D at 7.

described as claim for reimbursement from the settlement fund or a third-party beneficiary's right to enforce the settlement agreement, the relief Delta seeks is the same - reimbursement from the Settling Defendants for dip tube work performed.  As discussed at length above, Delta has not demonstrated satisfaction of the requirements for intervention as a matter of right or permissive intervention.  Nothing about Delta's status as third-party beneficiary changes that conclusion.[10]

On November 18, 2005, Delta filed a complaint in state court against GCG, WTD, and the dip tube manufacturer, but failed to serve any of the defendants within the requisite 120-day service deadline pursuant to Federal Rule of Civil Procedure 4(m).  On March 20, 2006, Delta filed the underlying first amended complaint against GCG and the WTD in the Superior Court of the State of Arizona for the County of Maricopa.  Plaintiff's complaint alleged four claims against GCG and WTD: breach of contract, unjust enrichment, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.  WTD timely removed plaintiff's complaint to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  GCG subsequently filed a consent to removal jurisdiction and joined the notice of removal.

 Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This court granted the motion with respect to Delta's promissory estoppel and unjust enrichment claims on the ground that those claims were time-barred under Arizona law.[11]  The court requested supplemental briefing with respect to choice of law for the remaining claims.  The court ultimately determined that Missouri law applied to Delta's breach of contract and breach of the implied covenant of good

---

[10]Doc. 18, exh. D at 10.

[11]Doc. 36.

faith and fair dealing claims.[12]  Defendants filed another motion to dismiss at docket 42.

This court found that Missouri law did not support a finding that Delta was an intended

third-party beneficiary of the settlement agreement or a finding that GCG had assumed

the legal duties of the settling defendants in *Heilman*.[13]  Defendants' motion was

therefore granted at docket 48, and the case was dismissed.

### III.  DISCUSSION

Defendants claim that they are entitled to an award of attorney's fees under

§ 12-341.01 of the Arizona Revised Statutes.  Section 12-341.01(A) provides that "[i]n

any contested action arising out of a contract, express or implied, the court may award

the successful party reasonable attorney fees."  Section 12-341.01(B) states that an

"award of . . . attorney fees pursuant to subsection A should be made to mitigate the

burden of the expense of litigation to establish a just claim *or a just defense*."[14]

Subsection A thus applies even where a defending party has prevailed (*i.e.*, where the

prevailing party was not seeking damages).  However, Arizona law must apply to the

issue of attorney's fees in order for the court to consider the specific application of

§ 12-341.01.

Pursuant to § 12-341.01, a court may award a successful party reasonable

attorney's fees in any contested action "arising out of a contract."  In its order at

docket 36, the court determined that Missouri law applies to all issues arising out of the

---

[12]*Id.*

[13]Doc. 48.

[14]A.R.S. §12-341.01(B) (emphasis added).

contract in this action.  Nonetheless, the court will examine choice of law with respect to this particular issue.

**A. Choice of Law**

**1. Doctrine of Depecage**

Defendants argue that even though Missouri law applies to the contractual issues, Arizona law applies to the issue of attorney's fees.  Defendants rely primarily on two cases, *Bryant v. Silverman*[15] and *Aries v. Palmer Johnson, Inc.*[16]  Defendants contend that *Bryant* stands for the broad principle that Arizona applies the doctrine of depecage.  The relevant footnote states that "[b]ecause [the court's] choice of law analysis could result in one state having a greater interest in compensatory damages and the other punitive damages, *we will apply* the doctrine of depecage in resolving *this* case which *allows* us to apply different state laws to different issues."[17]  The italicized portions make clear that application of the doctrine of depecage is not compelled under Arizona law, but rather is available when necessary.  Delta notes that *Bryant* is distinguishable because the court there was applying Restatement (Second) of Conflicts (1971) § 145, and not § 188. The significance of this difference is that § 145 deals with tort principles and § 188 deals with contract principles, which becomes clearer in the context of *Aries*.

---

[15]703.P.2d 1190 (Ariz. 1985)

[16]735 P.2d 1373 (Ariz. Ct. App. 1987).

[17]*Bryant*, 703 P.2d at 1193 n.1 (emphasis added).

In *Aries*, the court stated that "the recovery of attorney's fees under A.R.S. § 12-341.01(A) is a form of damages and is to be determined by the principles set forth in the Restatement (Second) of Conflicts § 188 . . . ."[18]  Section 188 is used to determine governing law over contract disputes where a contract does not expressly provide which state's law applies.  Because four out of the five factors listed in § 188 pertain to the underlying contract, it is fair to infer that the Arizona Court of Appeals was referring to "damages" in the context of the contract at issue.  From this inference it follows that it is illogical to apply a different state's substantive law to matters concerning the contract and another state's law to matters concerning contract damages. Application of different states' law to the separate issues of compensatory and punitive damages in a tort claim may be appropriate if the liable party's actionable conduct takes place in one state and the same party is a citizen of another state.  This is because any punitive award would function to deter tortious conduct in *any* state.  But, taken together, *Bryant* and *Aries* weigh against application of the doctrine of depecage to the issue of attorney's fees when the underlying dispute is founded in contract.  It would be illogical to apply Arizona law to this request for attorney's fees, construed as a form of contract damages, when Missouri law governed the contractual dispute.

### 2. Application of the Restatement Sections

An application of the relevant Restatement provisions, as required under Arizona choice of law rules, leads to the same conclusion. As stated by the *Aries* court, determination of the applicable law to the issue of attorney's fees should be made

---

[18]*Aries v. Palmer Johnson, Inc.*, 735 P.2d 1373 (Ariz. Ct. App. 1987).

according to § 188.[19]  Defendants argue that "because Delta was found to be a stranger to the Missouri contract, analysis based upon Section 188 factors is less relevant than it was when determining which law applied to the contract dispute itself."[20]  Despite the court's finding that Delta is a non-party to the contract at issue, the nature of the action has not changed.  Delta's claims were still based on a contract and contract principles have controlled disposition of the case thus far. This court has already determined that the contacts enumerated in § 188 render Missouri law applicable to the contractual issues.  It is unnecessary to undertake any additional analysis of those criteria. However, § 188 states that those contacts should "be taken into account in applying the principles of § 6 to determine the law applicable to an issue . . . ."[21]  "The principles stated in § 6 underlie all rules of choice of law and are used in evaluating the significance of a relationship, with respect to the particular issue, to the potentially interested states, the transaction and the parties."[22]

Section 6 of the Restatement (Second) of Conflict of Laws provides in pertinent part:

(2) When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

---

[19]*Id.* at 1381.

[20]Doc. 59 at 5.

[21]Restatement (Second) of Conflict of Laws § 188(2) (1971).

[22]Restatement (Second) of Conflict of Laws § 188 cmt. b.

(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be
applied.

The "needs of the interstate system" are not implicated by an award of attorney's fees in this case and thus this factor does not weigh in favor of applying either state's law. The relevant policies of Arizona weigh in favor of applying Arizona law because a stated purpose of A.R.S. § 12-341.04 is "to mitigate the burden of the expense of litigation to establish a just claim or a just defense."[23]  For purposes of this motion, Missouri is the only other potentially interested state.  The relevant policies of Missouri weigh against applying Arizona law because "Missouri law does not award attorney fees unless provided for by statute, contract, or 'when needed to balance benefits in a court of equity.'"[24]

Defendants argue that because Delta brought the action in Arizona, "it could anticipate that . . . it would be subject to Arizona law regarding attorneys' fees."[25] However, if one state's substantive law is applied to the great weight of a case, the expectation that that state's law will continue to govern any further disposition is perhaps more justifiable. This factor weighs in favor of applying Missouri law.

The basic policies underlying contract law also weigh in favor of applying Missouri law. As stated above, it would make little sense to apply one state's law in

[23]A.R.S. §12-341.01(B).

[24]*Randolph v. Missouri Highways and Transp. Com'n.*, 224 S.W.3d 615, 619 (Mo.App. W.D. 2007) (internal citation omitted).

[25]Doc. 59 at 6.

-10-

resolving a contractual dispute and another state's to decide the issue of damages. For similar reasons, the continued application of Missouri law would bolster the certainty, predictability, and uniformity of result.  Finally, it would be easier to apply Missouri law because Missouri law requires that to be recoverable, attorney's fees must be accounted for in the contract.  Under § 6 of the Restatement (Second) of Conflicts, Missouri law should apply to the issue of attorney's fees just as it did to the underlying issues arising out of contract.

### B. Attorney's Fees Under Missouri Law

"Missouri follows the 'American Rule' which requires each party to bear the expense of their own attorney fees."[26]  As indicated above, in an action arising out of contract, Missouri courts are not allowed to award attorney's fees unless provided for by the contract at issue.[27]  Delta argues that "there is no contractual basis for an award of attorney's fees to Defendants under Missouri law."[28]  Defendants have not disputed this and have instead relied solely on Arizona law.  Because the court has found neither a contractual nor a statutory basis for an award of attorney's fees under Missouri law, the court will deny defendants' request for an award of attorney's fees.

---

[26] *Randolph*, 224 S.W.3d at 619.

[27] *Id.*

[28] Doc. 60 at 6.

-11-

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion for an award of attorney's fees at docket 50 is **DENIED**.

DATED at Anchorage, Alaska, this 8th day of July 2008.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE