UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| DELTA MECHANICAL INC., | )<br>) |
| Plaintiff, | ) 2:06-cv-01095 JWS<br>) |
| vs. | ) ORDER AND OPINION<br>) |
| GARDEN CITY GROUP, INC., *et al.*, | ) [Re: Motions at Dockets 125 and 127]<br>) |
| Defendants. | )<br>) |

## I. MOTIONS PRESENTED

At docket 125, defendants Rheem Manufacturing Company, American Water Heater Company, Bradford White Corporation, A.O. Smith Corporation, and Lochnivar Corporation (collectively "defendants") move pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Plaintiff Delta Mechanical, Inc. ("Delta") opposes the motion at docket 130. Defendants' reply is at docket 133.

At docket 127, Delta cross-moves for partial summary judgment on the issue of whether it was an intended third-party beneficiary of the settlement agreement on which its claims are based. Defendants oppose the motion at docket 132. Delta's reply is at docket 136.

Oral argument was requested and was heard on January 11, 2012.

## II. BACKGROUND

Defendants manufacture water heater tanks. Delta is a plumbing company. In *Heilman v. Perfection Corp.*,[1] a class action lawsuit against defendants, the United States District Court for the Western District of Missouri approved a settlement agreement by which defendants agreed to facilitate the repair of defective water heaters that they had manufactured.

The settlement agreement defined the class as "all persons throughout the United States who own a water heater manufactured by [defendants] containing a [dip tube manufactured by Perfection Corporation] or who owned such a heater and suffered damages."[2] Under Section 8.2 of the agreement, members of the class who had not yet incurred out-of-pocket expenses related to the faulty dip tubes or whose problems had not yet been fully repaired were entitled to either a certificate for a dip tube replacement or a repair of property damage or both.[3] Class members who timely submitted a proof of claim would receive a certificate matched to the serial number of their water heater entitling them to a dip tube replacement. The certificates had to be redeemed within six months of their receipt. The agreement stated that "[t]he names of authorized service personnel who [would] be available to provide the service [would] be provided with the certificate."[4] Defendants agreed to "ensure that adequate and trained service personnel [would be] available to provide the service to Class Members in a timely manner."[5] In

---

[1] No. 99-0679-CW-W-6 (May 1, 2000 W.D. Mo.).

[2] Doc. 126-2 at 14; *see also id.* at 13 (defining "Subject Dip Tube" as "all dip tubes manufactured . . . by Perfection between August 1993 and October 1996 that were installed into [defendants'] water heaters"). A dip tube is a "plastic tube that transports cold water from the intake at the top of the water heater to the bottom of the water heater tank." *Id.* at 10.

[3] *Id.* at 15.

[4] *Id.* at 16.

[5] *Id.*

order to receive benefits under Section 8.2., proofs of claim had to be postmarked by December 31, 2000.

Delta was among the "authorized service personnel" enlisted to perform dip tube replacements. Delta maintains that it performed hundreds of dip tube replacements between January 2000 and December 2001 for class members who had submitted proofs of claim. However, defendants did not issue certificates to those class members. Presumably because certificates were not issued, Delta was not compensated for that work.

Delta hired a collection agency in December 2001 to seek payment from defendants. In August 2003, defendants informed Delta that the settlement fund had been exhausted. Delta subsequently moved to intervene in the Missouri action to enforce the settlement agreement. In September 2005, the Western District of Missouri denied Delta's motion.

In March 2006, defendants filed this lawsuit in Arizona state court, asserting claims against defendants and the administrator of the settlement agreement[6] for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel. The case was removed to federal court on the basis of diversity.

In June 2007, the court dismissed Delta's promissory estoppel and unjust enrichment claims as barred by the applicable statutes of limitation. In a separate order, following supplemental briefing that applied Missouri law, the court dismissed Delta's breach-of-contract and breach of the implied covenant of good faith and fair dealing claims, holding that Delta was not an intended third-party beneficiary of the *Heilman* settlement agreement.[7] The Ninth Circuit Court of Appeals reversed the

---

[6]Garden City Group, Inc. was the third-party administrator of the settlement agreement. It was dismissed as a defendant to this lawsuit. *See* doc. 48.

[7]Doc. 48.

-3-

court's determination and stated that "[t]he evidentiary record on this issue demonstrates that at this early stage of the case . . . whether Delta was or was not a third-party beneficiary is a genuine issue of material fact that might survive summary judgment."[8]

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[10] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[12] The reviewing court may not weigh evidence or assess the credibility of witnesses.[13] The burden of persuasion is on the moving party.[14]

---

[8] Doc. 66-1 at 2–3.

[9] Fed. R. Civ. P. 56(a).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[11] *Id.*

[12] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[13] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## IV. DISCUSSION

Third-party beneficiary status exists where the terms of a contract "clearly express intent to benefit [a third] party or an identifiable class of which the [third] party is a member."[15] "In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves."[16] "[A] mere incidental benefit to the third party is insufficient to bind that party."[17] "Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a direct obligation to him."[18] "In order for third party beneficiary status to arise, it must be shown that the benefit to the third party was the cause of the creation of the contract."[19] "Only those third parties for whose primary benefit the contracting parties intended to make the contract may maintain an action."[20]

The settlement agreement does not expressly declare an intent to benefit the authorized service personnel.[21] The court therefore starts with the presumption that Delta is not an intended third-party beneficiary.

---

[15]*Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. 2006).

[16]*Id.*

[17]*Id.*

[18]*Chesus v. Watts*, 967 S.W.2d 97, 106 (Mo. Ct. App. 1998).

[19]*Chmielski v. City Products Corp.*, 660 S.W.2d 275, 289 (Mo. Ct. App. 1983).

[20]*OFW Corp. v. City of Columbia*, 893 S.W.2d 876, 879 (Mo. Ct. App. 1995).

[21]Delta does not argue otherwise. Delta distinguishes certain authority cited by defendants on the ground that "it is beyond dispute that the [settlement agreement] contains several references to the class of approved plumbers/authorized service personnel." Doc. 130 at 6. Those references do not include an express declaration of intent to benefit the authorized service personnel.

-5-

**A. Defendants' Motion**

    **1. Delta's Breach-of-Contract Claim**

Defendants argue first that the contract clearly expresses an intent to benefit the class members. Defendants note that the contract states the parties' conclusion "that it is in the best interests of the Class to enter into th[e] Agreement to avoid the uncertainties of litigation and to assure a timely benefit to all members of the Class."[22] The court agrees that the contract expresses an intent to benefit the members of the class. Although that intent does not preclude intent to also benefit the service personnel who would be performing the work, it undermines the notion that a benefit to service personnel was a motivating factor underlying the settlement agreement.

Defendants also argue that the service personnel are not identifiable until a class member obtains a certificate and selects a plumber from the list of adequate and trained service personnel. The primary question under Missouri law is whether defendants intended to assume a *direct obligation* to the class of service personnel. Here, any obligation assumed by defendants was *indirect* and *conditional*. There was no obligation running from defendants to Delta–or any other authorized service personnel–until a class member submitted a proof of claim, obtained a certificate, and selected Delta from the provided list.[23]

As stated above, "[o]nly those third parties for whose *primary benefit* the contracting parties intended to make the contract may maintain an action."[24] "[I]t is not necessary for the parties to the contract to have as their 'primary object' the goal of

---

[22]Doc. 126-2 at 14.

[23]Doc. 126-2 at 16. The settlement agreement stated that "[u]pon submission of a timely and valid Proof of Claim . . . a certificate for a dip tube replacement" would be issued. *Id.* "The names of authorized service personnel who [would] be available to provide the service" would be included with the certificate. *Id.*

[24]*OFW Corp.,* 893 S.W.2d at 879 (emphasis added).

benefitting the third parties, but only that the third parties be primary beneficiaries."[25] It does not make sense to grant a right to maintain an action on a contract to a third party where the assumed "obligation" running to the third party is conditional on something beyond and in addition to that party's performance.

Defendants raise a similar argument based on the proposition that third party beneficiaries "have no greater rights under [a] contract than . . . a party to the agreement."[26] Defendants argue that allowing Delta to sue for breach of contract based on repairs that were not submitted or approved and where no certificate issued would give them greater rights under the settlement agreement than the class members who were bound to follow the claim procedure.

Delta's primary argument in response to defendants' motion is that the contract and various extrinsic evidence demonstrate that defendants assumed "a direct obligation to pay the class of approved plumbers for the dip tube repairs."[27] It is evident from both the contract and extrinsic evidence that defendants agreed to pay for the dip tube replacements. However, defendants' obligation to pay for the repairs does not give rise to third-party beneficiary status because their obligation to pay was conditional and attenuated. Payment was conditioned on class members submitting a proof claim, issuance of a certificate, and selection of a plumber from the list of authorized service personnel that accompanied the certificate. Even in the light most favorable to Delta, there was no obligation running from defendants to the authorized service personnel until those conditions were fulfilled, and those conditions were not promised performance under the settlement agreement. Defendants' potential obligation to compensate authorized service personnel for the dip tube replacements is not sufficient to confer third-party beneficiary status.

---

[25] *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993).

[26] *Laclede Inv. Corp. v. Kaiser*, 541 S.W.2d 330, 338 (Mo. Ct. App. 1976).

[27] Doc. 130 at 2–3.

The court's conclusion is bolstered by the "Protocols, Procedures & Processes for Replacing Consumer Dip Tubes" manual and application to perform the dip tube replacement work.[28] That manual, signed by Delta's general manager, describes the claims procedure and issuance of the certificate as contemplated in the settlement agreement. It also describes payment to the authorized service personnel. The manual states that "approved plumbing professional[s] [would] be paid by check within 30 days of receipt of the dip tube *and properly completed Certificate.*"[29] "Approved plumbing professionals [were to] be assigned a vendor number and [would] receive instructions for completing the Certificates."[30] The manual thus reinforces the proposition that there was no direct obligation to the authorized service personnel sufficient to give rise to third-party beneficiary status.

Delta argues that the issue of whether it complied with the terms of the settlement agreement–particularly the procedural terms–is separate and distinct from the issue of whether authorized service personnel were intended beneficiaries under the agreement. Delta is correct that the two issues are distinct, and also correct that whether the authorized service personnel are third-party beneficiaries "is a function of the parties' intent."[31] Compliance or non-compliance with the procedural terms requiring submission of a proof of claim and issuance of a certificate might not affect third-party beneficiary status in the abstract. However, those terms bear on the present motion because they reflect the conditional nature of the obligation that ran from defendants to the authorized service personnel. As discussed above, a potential obligation to compensate the authorized service personnel for dip tube replacements is insufficient to give rise to third-party beneficiary status. Because there was no assurance that the

---

[28]*See* doc. 128-13 at 2.

[29]Doc. 128-13 at 3 (emphasis added).

[30]*Id.*

[31]Doc. 130 at 11.

benefit would flow, the authorized service personnel cannot be considered primary beneficiaries.

Delta also argues that defendants did not support their claim that Delta's customers did not submit a valid proof of claim, that replacement certificates were not issued or returned, and that class members did not select Delta from an approved list. Those disputed facts would weigh on potential breach and do not affect analysis of the third-party beneficiary issue. Delta's argument that those disputed facts should preclude summary judgment only holds if it has standing to enforce the contract as a third-party beneficiary. The court has concluded that it does not.

### 2. Delta's Breach of the Implied Covenant of Good Faith & Fair Dealing Claim

"In Missouri, a covenant of good faith and fair dealing is implied in every contract." It functions to "prevent[] one party from acting in a manner that evades the spirit of the transaction or that denies the other party the expected benefit of the contract."[32] Because Delta is neither a party to the settlement agreement, nor a third-party beneficiary thereunder, it does not have standing to enforce the implied covenant of good faith and fair dealing.

### B. Delta's Cross-Motion

Delta frames the issue in its cross-motion for summary judgment as whether defendants intended to pay for the dip tube replacements. The court agrees that Delta is a member of the class of authorized service personnel and that authorized service personnel were to perform the repairs.

Delta points to Section 8.3.1 which states that defendants "are to . . . bear all administrative costs."[33] "Administrative expenses" are defined elsewhere in the agreement to include "disbursements to approved third-party vendors in connection with

---

[32] *Edoho v. Bd. of Curators*, 344 S.W.3d 794, 799 (Mo. Ct. App. 2011).

[33] Doc. 126-2 at 16.

the carrying out of the terms of the Settlement Agreement."[34]  However, while that language supports the notion that defendants assumed an obligation to Delta–as a third-party vendor–Missouri law requires that there be a "direct obligation."[35]  Other sections of the contract make clear that defendants had no obligation to authorized service personnel unless protocol was followed and a class member selected it to perform the dip tube replacement.  The procedures set out in the settlement agreement functioned as a condition on defendants' obligation.  Because the benefit to authorized service personnel was conditional and attenuated, the authorized service personnel are not third-party beneficiaries under Missouri law.

Delta cites *Kansas City N.O. Nelson Co. v. Mid-Western Constr. Co.*[36]  In that case, the Missouri Court of Appeals determined that a third-party supplier to a sub-subcontractor was an intended third-party beneficiary of a contract between the general contractor and the subcontractor.  The subcontract between the general contractor and the subcontractor contained a promise that the subcontractor would pay for all materials.[37]  The court concluded that the supplier was a donee beneficiary of the subcontract.  Delta analogizes the subcontractor's promise to pay for materials to defendants' promise to pay for dip tube replacements.

"A person is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the beneficiary."[38]  Therefore, under *Kansas City*, the questions are whether the class members obtained the promise

---

[34]*Id.* at 9.

[35]*Chesus*, 967 S.W.2d at 106.

[36]782 S.W.2d 672 (Mo. Ct. App. 1989).

[37]*Id.* at 673–74.

[38]*Id.* at 677.

that defendants would pay for repairs in order to make a gift to the authorized service personnel, or to confer a right on the authorized service personnel against defendants to some performance not asserted to be due from the class members to the authorized service personnel. Payment to the authorized service providers for the dip tube replacements would have compensated the authorized service providers for work performed and therefore would not have been a gift. The court is unaware of any potential performance between the class members and the authorized service personnel that could have motivated defendants' promise to pay for the dip tube replacements. Consequently, *Kansas City* does not compel the conclusion that Delta is a third-party beneficiary to the settlement agreement.

Delta argues that defendants' admissions establish that Delta was an intended third-party beneficiary. All of the "admissions" cited by Delta, however, establish at most that defendants intended to pay for the dip tube replacements.[39] As discussed above, that intended benefit did not give rise to third-party beneficiary status.

## V. CONCLUSION

For the reasons above, defendants' motion for summary judgment at docket 125 is **GRANTED**. The Clerk shall please enter judgment for defendants.

Delta's motion for partial summary judgment at docket 127 is **DENIED**.

DATED this 11th day of January 2012.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[39] *See* doc. 127 at 11–16.