UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Delta Mechanical, Inc.,** | ) |
| Plaintiff, | ) 2:06-cv-01095 JWS |
| vs. | ) **FINAL ORDER AND OPINION** |
| **Rheem Manufacturing Company,** *et al.*, | ) [Re: Motion at Docket 152] |
| Defendants. | ) |

## I. MOTION PRESENTED

At docket 152 defendants Rheem Manufacturing Company, American Water Heater Company, Bradford White Corporation, A.O. Smith Corporation, and Lochnivar Corporation (collectively "defendants") move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on plaintiff Delta Mechanical's remaining breach-of-contract claim and its good faith claim. Defendants assert that plaintiff has not and cannot establish that it complied with the claims protocol for any of its 2,611 claims for which it believes it is due payment. Plaintiff opposes the motion at docket 158. Defendants reply at docket 158. Oral argument was heard March 6, 2015.

## II.  BACKGROUND

Defendants manufacture water heater tanks.  Delta is a plumbing company.  In *Heilman v. Perfection Corp.*,[1] a class action lawsuit against defendants, the United States District Court for the Western District of Missouri approved a settlement agreement by which defendants agreed to facilitate the repair of defective water heaters that they had manufactured (the "Agreement").

The Agreement defined the class as "all persons throughout the United States who own a water heater manufactured by [defendants] containing a [dip tube manufactured by Perfection Corporation] or who owned such a heater and suffered damages."[2]  Under Section 8.2 of the Agreement, members of the class who had not yet incurred out-of-pocket expenses related to the faulty dip tubes or whose problems had not yet been fully repaired were entitled to certain benefits: either a certificate for a dip tube replacement or a repair of property damage or both.[3]  The benefits were subject to a protocol set forth in Section 8.2.  Class members seeking benefits under the Agreement were required to submit a proof-of-claim form.  Those who had a valid claim for benefits would then receive a certificate, which could be redeemed for services within six months.  A list of authorized service personnel would be provided along with the certificate.  The Agreement stated that each certificate would have the water heater's serial number printed on it, and the certificate could "only be applied to that water heater by matching the serial number on the certificate to the serial number

---

[1] No. 99-0679-CW-W-6 (May 1, 2000 W.D. Mo.).

[2] Doc. 126-2 at p. 14; *see also id.* at p. 13 (defining "Subject Dip Tube" as "all dip tubes manufactured . . . by Perfection between August 1993 and October 1996 that were installed into [defendants'] water heaters").  A dip tube is a "plastic tube that transports cold water from the intake at the top of the water heater to the bottom of the water heater tank."  *Id.* at p. 10.

[3] *Id.* at p. 15.

on the water heater."[4]  In order to receive benefits under Section 8.2, the proof-of-claim form had to be postmarked by December 31, 2000.[5]

Delta was among the authorized service providers enlisted to perform dip tube replacements.  In applying to be an authorized service provider, Delta agreed to abide by the terms set forth in a pamphlet entitled "Protocols, Procedures & Processes for Replacing Consumer Dip Tubes" (the "Pamphlet").[6]  The Pamphlet described the process a class member would go through to obtain a certificate for service and how the plumbing professional would receive payment.[7]  Delta maintains in its complaint that it performed hundreds of dip tube replacements between January 2000 and December 2001 for class members who had submitted proof-of-claim forms, but that defendants, through the claims administrator, never issued certificates to those class members despite their eligibility for benefits.  Specifically, Delta seeks payment from defendants for 2,611 dip tube services it allegedly performed for customers it believes are entitled to benefits under the Agreement.[8]

Delta hired a collection agency in December of 2001 to seek payment from defendants.  In August of 2003, defendants informed Delta that the settlement fund had been exhausted.  Delta subsequently moved to intervene in the Missouri action to enforce the Agreement.  In September 2005, the Western District of Missouri denied Delta's motion.

---

[4]*Id.* at p. 16.

[5]*Id.* at p. 17.

[6]Doc. 126-6 at p. 2.

[7]*Id.* at p. 3.

[8]Doc. 153 at ¶ 11; Doc. 159 at ¶ 11; Delta's list of unpaid claims is in the record at Doc. 153-1.

In March 2006, plaintiff filed this lawsuit in Arizona state court, asserting claims against defendants and the administrator of the settlement agreement[9] for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and promissory estoppel. The case was removed to federal court on the basis of diversity.

In June 2007, the court dismissed Delta's promissory estoppel and unjust enrichment claims based on the applicable statutes of limitation. In a separate order, following supplemental briefing that applied Missouri law, the court dismissed Delta's breach-of-contract and good faith claims, holding that Delta was not an intended third-party beneficiary of the Agreement.[10] The Ninth Circuit Court of Appeals reversed the court's determination, stating that "[t]he evidentiary record on this issue demonstrates that at this early stage of the case . . . whether Delta was or was not a third-party beneficiary is a genuine issue of material fact that might survive summary judgment."[11]

After discovery closed, defendants moved for summary judgment as to whether Delta was a third-party beneficiary. The court granted summary judgment in favor of defendants on the ground that Delta was not a third-party beneficiary of the Agreement under Missouri law.[12] The Ninth Circuit Court of Appeals reversed and remanded the case to the district court for proceedings to determine "whether Delta and its customers complied with the claims protocol for the disputed claims."[13]

Defendants again move for summary judgment. They argue that Delta has not and cannot establish compliance with the claims protocol as to any of the 2,611 service

---

[9]Garden City Group, Inc. was the third-party administrator of the settlement agreement. It was dismissed as a defendant to this lawsuit. *See* doc. 48.

[10]Doc. 48.

[11]Doc. 66-1 at pp. 2-3.

[12]Doc. 138.

[13]Doc. 148-1 at p. 5.

claims Delta contends are eligible for payment under the Agreement, and because compliance with the claims protocol was a condition that must have been followed before a class member could avail herself of the benefits under the Agreement, payment is not due.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[15] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[16] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[18] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[19] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for

---

[14] Fed. R. Civ. P. 56(a).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16] *Id.*

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[18] *Id.* at 323.

[19] *Id.* at 323-25.

trial.[20] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[21] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[22]

## IV. DISCUSSION

### A. Condition precedent

Defendants assert that summary judgment is warranted because the record demonstrates that plaintiff and its customers did not comply with the claims protocol as to any of Delta's alleged 2,611 unpaid service claims, and because the protocol is a condition precedent in the Agreement defendants are not obligated to pay Delta for these claims. Plaintiff asserts that the protocol set forth in the Agreement is not a condition precedent. It argues that just because plaintiff or its customers did not perfectly comply with the process described in the Agreement and Pamphlet does not mean that defendants were absolved of all payment obligations.

Pursuant to Missouri law, "[a] condition precedent is an act or event that must be performed or occur, after the contract has been formed, before the contract becomes effective."[23] If the condition does not occur, performance thereafter is excused.[24] A

---

[20] *Anderson,* 477 U.S. at 248-49.

[21] *Id.* at 255.

[22] *Id.* at 248-49.

[23] *Historic Hermann, Inc. v. Thuli*, 790 S.W.2d 931, 936 (Mo. Ct. App. 1990).

[24] *Highland Inns Corp. v. Am. Landmark Corp.*, 650 S.W.2d 667, 672 (Mo. Ct. App. 1983); *see also Centerco Props., Inc. v. Boulevard Inv. Co.*, 795 S.W.2d 521, 522 (Mo. App. 1990) ("A rational reading of the unambiguous language of the section reveals a condition precedent which must be satisfied in order for the realtors to be eligible to receive their commissions.").

plaintiff seeking enforcement of a contract containing conditions precedent to be performed by the plaintiff must plead and show performance of such conditions or provide an excuse for the nonperformance.[25]  However, because conditions precedent are disfavored, it must be clear that the parties intended to provide for a condition precedent by using terms such as "on condition," "provided that," or "so that."[26]

Here, the Agreement unequivocally makes the claims protocol set forth in Section 8.2 a condition precedent.  The language states that class members "shall be entitled to the benefits as described below, *subject to the following provisions*."[27]  The provisions that follow include the claims protocol.  The use of the term "subject to" indicates that benefits were contingent upon compliance with the protocol.[28]  Indeed, in the order at docket 138, the court concluded that it considered the claims protocol a condition to payment.  Moreover, the Ninth Circuit, in its remand to the court, described the Agreement as creating a condition precedent: "the [defendants] promised to pay Delta directly for the debt incurred by the customers on the condition that the claims protocol was followed."[29]  Although Delta is not a party to the Agreement, the condition— in this case compliance with the claims protocol—must nonetheless "occur to activate the right of the beneficiary just as it must occur to activate the right of a promisee."[30]  A third-party beneficiary is subject to any limitations imposed by the terms

---

[25]*Hastings & Chivetta Architects v. Burch*, 794 S.W.2d 294, 296-97 (Mo. Ct. App. 1990); *MFA Ins. Co. v. Murphy*, 606 S.W.2d 661, 663 (Mo. 1980).

[26]*Kansas City S. Ry. Co. v. St. Louis-S.F. Ry. Co.*, 509 S.W.2d 457, 460 (Mo. 1974).

[27]Doc. 126-2 at p. 15 (emphasis added).

[28]*See Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1099-1100 (2d Cir. 1992) (noting that "subject to" often marks an event as a condition); *Dan Bunn, Inc. v. Brown*, 590 P.2d 209 (Oregon 1979) (holding that a provision that made the agreement "subject to" a certain event "clearly indicated an intent to impose a condition precedent").

[29]Doc. 148-1 at p. 5.

[30]See Doc. 148-1 (quoting 9-46 *Corbin on Contracts* § 46.1).

of the contract.[31] Thus, in order to prevail against defendants and obtain payment, Delta must demonstrate that the customers associated with the outstanding 2,611 claims for payment were class members who complied with the protocols outlined in the Agreement.

**B. Claims protocol**

Plaintiff, citing *United States v. Mallinckrodt, Inc.*,[32] argues that defendants are not entitled to summary judgment because they have not come "forward with admissible evidence to support [their] contention that there is no record evidence sufficient to create a genuine issue of material fact."[33] Plaintiff contends that defendants need to come forward with "evidence that plaintiff is not entitled to recover as to each and every one of its 2,611 claims."[34] Plaintiff misunderstands defendants' burden. Where, such as here, the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[35] In other words, defendants do not need to provide their own evidence to negate plaintiff's claims to be eligible for summary judgment; they can instead cite to the record to show that the opposing party does not have enough evidence of an essential element of its claim to support a jury finding in its favor.[36] Indeed, the case plaintiff relies on,

---

[31] Restatement (Second) of Contracts 309, Comment b.; *see also Ceco Corp. v. Plaza Point, Inc.*, 573 S.W.2d 92, 94 (Mo. Ct. App. 1978) ("a third-party beneficiary's rights on a surety contract are delineated by the specific terms contained in the contract, and his rights are no greater than those of the contracting party through whom he asserts the right or claim.")

[32] 343 F. Supp. 2d 809 (E.D. Mo. 2004).

[33] Doc. 158 at p. 6.

[34] *Id.*

[35] *Celotex*, 477 U.S. at 323-25.

[36] *Celotex*, 477 U.S. at 323; *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *Headlands Reserve, LLC v. Ctr. for Natural Lands Mgmt.*, 523 F. Supp. 2d 1113, 1123 (C.D. Cal. 2007).

*Mallinckrodt*, did not set forth a different standard. It simply noted that the moving party cannot meet its initial burden by alleging "some metaphysical doubt as to the material facts" but rather must cite to the record submitted.[37] Defendants have done so here.

It is clear that in order to be eligible for the benefits under the Agreement, a class member had to first submit a proof-of-claim form. Once a valid claim form was submitted, the class member would become an authorized claimant and would get a certificate, which could "only be applied to that water heater by matching the serial number on the certificate to the serial number on the water heater."[38] In other words a certificate was required before services could be rendered. That procedure was reiterated in the Pamphlet. It stated that the plumbing professional would make the approved repairs "after matching the serial number on the [certificate or authorization letter] to the serial number on the water heater."[39] Delta agreed to comply with the terms described in the pamphlet.[40]

It is undisputed that Delta provided repair services to customers they believed were class members prior to the customers submitting a proof-of-claim form and receiving a certificate to verify the customer's status.[41] Without the certificate, Delta could not match the serial numbers as required under the Agreement to ensure that the customer was an authorized claimant who had a water heater eligible for services. Delta instead determined eligibility on its own because it believed its employees could

---

[37] *United States v. Mallinckrodt*, 343 F. Supp. 2d 809, 814, 816 (E.D. Mo. 2004).

[38] Doc. 126-2 at p. 16 (Section 8.2.3).

[39] Doc. 126-6 at p. 3.

[40] Doc. 126-6 at p. 2.

[41] *See, e.g.,* doc. 153-5 at pp. 9-10, 13 (Kitchukov depo. pp. 21-25, 40-41); doc. 153-7 at p. 77.

easily confirm if a customer's water heater was covered under the Agreement.[42] Delta had the customer fill out a proof-of-claim form after the repair service had been completed and sign a form agreeing to send the certificate to Delta once received.[43] The record reflects that most of the claims on Delta's unpaid list reflect such an arrangement, where Delta would perform the work first and then rely on the customer to follow through on the certificate. Delta's president, Todor Kitchukov, testified at his deposition that of the 2,611 claims for which Delta believes it is entitled to payment, "probably most of them" were done before the customer had a certificate.[44]

Since defendants have met their burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[45] Plaintiff has not done so. It does not point to any testimony or documentation to show compliance with the claims protocol for any of the 2,611 claims that are the subject of this lawsuit. That is, plaintiff fails to point to any evidence showing an unpaid claim where the customer had a certificate before Delta serviced the water heater. The only evidence related to Delta's alleged 2,611 unpaid claims is a spreadsheet of the names and addresses of customers it believes should have been considered authorized claimants and the amount owed as to that customer.[46] Indeed, Svilen Nikolov, the Delta employee in change of finance, budgeting, and accounts receivable and tasked with assisting Delta's lawyers during this litigation, could not say what type of documents Delta kept to support each claim.[47] The information was simply generated

---

[42]Doc. 153-5 at pp. 9, 13 (Kitchukov depo. pp. 24, 40-41); doc.153-7 at p. 17 (Nikolov depo. p. 57 at ll. 17-21); doc. 153-7 at p. 78.

[43]Doc. 153-5 at pp. 9, 16 (Kitchukov depo. pp. 21-25, 49-50); doc. 153-7 at pp. 68- 72.

[44]Doc. 153-5 at p. 11 (Kitchukov depo. p. 31 ll. 3-19).

[45]*Anderson,* 477 U.S. at 248-49.

[46]Doc. 153-7 at p. 7 (Nikolov depo. pp. 18).

[47]Doc. 153-7  at pp. 7, 16 (Nikolov depo. pp. 22-23, 52-53)

from Delta's accounts receivable.[48]  Thus, plaintiff has not discovered or put forth any evidence from which a jury could find that its customers complied with the necessary protocol entitling them to repair services in the first place.  That is, there is no documentation as to whether the customer submitted a proof-of-claim form and whether the claim resulted in the issuance of a certificate for services or was deemed invalid.

**C. Waiver**

Plaintiff argues that regardless of whether it strictly adhered to the claims protocol, summary judgment is not warranted because there are disputed issues of fact as to whether defendants waived reliance on the part of the claims protocol requiring a class member to obtain a certificate before being eligible for repairs.  Under Missouri law, a party may waive any condition of a contract in that party's favor.[49]  "Waiver of rights under a contract . . . has been defined as an intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling."[50]  The waiver may be implied from conduct so long as the conduct is "so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible."[51]  In other words, there must be a clear, unequivocal, and decisive act in order to imply a waiver.[52]

In support of its waiver argument, plaintiff points to the affidavits of two former Delta employees who assert that they often called the claims administrator to check on the status of a customer's certificate.[53]  During such calls the employees would discuss

---

[48]Doc. 153-7 at p. 6 (Nikolov depo. p. 16).

[49]*Spencer Reed Group, Inc. v. Pickett*, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005).

[50]*Keltner v. Sowell*, 926 S.W.2d 528, 531 (Mo. Ct. App. 1996)

[51]*Spencer Reed Group*, 163 S.W.3d at 574.

[52]*Keltner*, 926 S.W.2d at 531.

[53]Doc. 131-3 at pp. 11-19.

the fact that the repairs had been performed prior to the certificate being issued and sometimes after such calls the administrator would nonetheless issue a certificate.[54] The affidavits state that "at no time during any of [the] calls with [the claims administrator] did [the] representative state that Delta should not perform the dip tube repair before obtaining a redemption certificate from the customer or that Delta would not be paid for any dip tube repairs performed before a redemption certificate had been issued to the customer."[55] Defendants call into question the veracity of these affidavits, noting that they are identically worded and one of the affiants is the daughter of Delta's owner. They also point to a letter that was purportedly sent to all authorized service providers, stating that "repairs completed before the consumer files a claim are invalid and will not be paid under the [Agreement]."[56] However, this letter is not written on letterhead, does not list any recipient, does not provide a date or a signature, and defendants do not provide any authenticating affidavit. Thus, it cannot be considered.[57] Regardless, at the summary judgment stage, all evidence presented by Delta, the non-movant, must be believed.[58] Moreover, the court cannot weigh conflicting evidence or make credibility determinations.[59]

Given that there is a factual dispute about the conduct of defendants, acting through the claims administrator, and whether that conduct amounted to an intentional waiver of the requirement that a class member first obtain a certificate, summary judgment in favor of defendants as to all of Delta's 2,611 claims for payment is

---

[54]Doc. 131-3 at pp. 12-13, ¶¶ 6-8; Doc. 131- 3 at p.18 ¶¶ 6-9.

[55]Doc. 131-3 at p. 13, ¶ 9; Doc. 131-3 at p. 18, ¶ 9.

[56]Doc. 126-6 at p. 6.

[57]*Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) (requiring authentication or some evidence that the document is what its proponent claims).

[58]*Anderson,* 477 U.S. at 255.

[59]*Id.*

inappropriate. The court stresses to plaintiff, however, that a waiver would not save those claims where payment was denied for other valid reasons under the Agreement—such as an ineligible water heater, an incomplete or nonexistent proof-of-claim form, or an untimely filing—because plaintiff has not set forth any evidence showing defendants waived reliance on other valid reasons for rejection.[60] There is not enough admissible evidence on the record at this time to establish which of the 2,611 claims were not paid because of the timing of repairs and which were not paid because of other valid and unwaived reasons.[61] Thus, the court cannot at this time identify and narrow the number of claims that would be affected in the event the trier of fact finds a waiver.

**D. Good faith and fair dealing**

Defendants also move for summary judgment as to plaintiff's claim for breach of the covenant of good faith and fair dealing. Under Missouri law, the covenant of good faith and fair dealing is "only an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting."[62] It "does not import into contract law the negligence principles of tort law," but instead "requires behavior on behalf of the parties that comports with the reasonable expectations of the parties . . . in light of their purposes in contracting."[63] As noted above, the record demonstrates that

---

[60] Plaintiff argues there is evidence to suggest that defendants may have waived reliance as to the deadline for filing proof-of-claim forms, but the evidence plaintiff relies on does not show that defendants accepted late proof of claims nor could the evidence support a finding that defendants intentionally waived reliance on the filing deadline.

[61] Defendants' attorney contends that a little over half of the 2,611 claims are not entitled to payment for reasons apart from the timing of Delta's repair services, but defendants do not identify these specific claims and do not provide evidentiary support for the attorney's findings, nor do they ask the court for summary judgment as to these specific claims.

[62] *Schell v. LifeMark Hospitals of Mo.*, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002).

[63] *Id.* at 230-31.

most, if not all, of Delta's 2,611 unpaid claims involve a situation where Delta performed services before its customers had a certificate, in contravention of the claims protocol. Thus, the required claims protocol was not followed and any subsequent denial of payment, regardless of a subsequent implied waiver, conformed with the "reasonable expectation of the parties" in light of the contract. Plaintiff does not point to any evidence to show defendants intentionally undermined the fulfillment of the contract or engaged in other opportunistic behavior.

## V.  CONCLUSION

Based on the preceding discussion, defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART as follows:  Plaintiff's claim for breach of the covenant of good faith and fair dealing is DISMISSED.  Plaintiff's claim for breach of contract survives because there appears to be a genuine issue of fact as to whether defendants impliedly waived the requirement that a class member receive a certificate before obtaining repair services.

DATED this 6th day of March 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE